1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6
7

THOMAS ALLEN BARNETT,

Plaintiff,

8

v.

9
10

WILLIAM J. KAPLA, et al.,

Defendants.

11

Case No.  20-cv-03748-JCS

**ORDER GRANTING IN PART AND DENYING IN PART THE REGENTS' AND DR. KAPLA'S MOTIONS TO DISMISS SECOND AMENDED COMPLAINT**

Re: Dkt. Nos. 38, 41

12
13

## I.      INTRODUCTION

14

Plaintiff Thomas Allen Barnett alleges that he was sexually harassed and assaulted by

15

Defendant William Kapla, M.D., his clinical professor at the University of California, San

16

Francisco School of Medicine (UCSF), and that UCSF responded to his report of sexual

17

misconduct with deliberate indifference.  On January 24, 2020, Plaintiff filed the present action in

18

state court against Defendants Dr. Kapla and the Regents of the University of California (the

19

"Regents").  Subsequently, Defendants removed the action to federal court and moved to dismiss

20

Plaintiff's claims.  The Court dismissed all of Plaintiff's claims, but granted him leave to amend

21

most of them.  Order (dkt. 36).  On October 16, 2020, Plaintiff filed the operative complaint,

22

asserting one federal claim against the Regents and six state claims against Dr. Kapla.  *See* Second

23

Am. Compl. ("SAC," dkt. 37).  In separate motions, Defendants again seek dismissal of Plaintiff's

24

claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See* Regents Mot. (dkt. 38);

25

Kapla Mot. (dkt. 41).  The Court held a hearing on December 11, 2020 at 9:30 a.m.  For the

26

reasons below, the motions are GRANTED in PART and DENIED in PART.[1]

27
28

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

## II.      INTRODUCTION

### A.   Second Amended Complaint

#### 1.  Facts Alleged

In August 2015, Plaintiff enrolled as a medical student at UCSF.  SAC ¶ 12; *see id.* ¶ 6.  As part of his curriculum, Plaintiff was assigned to a family medicine clerkship with Dr. Kapla, a UCSF Volunteer Clinical Faculty member.  *Id.* ¶¶ 2–3, 9–11, 14, 30–31.

Throughout the clerkship, which began on June 26, 2017 and ended on August 20, 2017, Plaintiff was sexually harassed by Dr. Kapla.  *Id.* ¶¶ 14, 27.  An incomplete summary of Plaintiff's description of Dr. Kapla's behavior follows.  First, "[m]any of Dr. Kapla's patients were gay men in their 40's and 50's," and when Dr. Kapla and Plaintiff met with gay male patients, Dr. Kapla would comment on Plaintiff's appearance and serve as "the master of ceremonies," leading patients into lengthy conversations involving "sexual comments and innuendos" about Plaintiff.  *Id.* ¶ 25.  When one patient responded that he wanted to "bend over [Plaintiff] and be sexual with him," Dr. Kapla laughed.  *Id.*  Second, Dr. Kapla "freely instructed" Plaintiff "to physically touch and examine patients . . . in a non clinical way."  *Id.*  During hernia exams, Dr. Kapla "would encourage [Plaintiff] to keep his finger in a patient's anus for longer periods than were medically necessary."  *Id.*  Third, Dr. Kapla would make inappropriate, non-medical comments about patients to Plaintiff, including comments about "the size, shape and other characteristics" of patients' penises.  *Id.*; *see id.* ¶ 27.

Additionally, Dr. Kapla would "constantly" tell Plaintiff that he was "cute" and "handsome" and tried "to engage [him] in inappropriate sexual conversations."  *Id.* ¶ 25.  For example, Dr. Kapla asked Plaintiff whether he enjoyed various sexual acts and which characteristics he found desirable in a sexual partner.  *Id.* ¶¶ 25, 27.  Also, when Plaintiff told Dr. Kapla that he would be traveling to England, Dr. Kapla gave him "unsolicited advice on where to get poppers and other sex drugs" and shoved a prescription into Plaintiff's pocket to "help with the flight."  *Id.* ¶ 28.  Lastly, Dr. Kapla "would consistently get physically close" to Plaintiff, often touching his legs, knees, and shoulders without permission.  *Id.* ¶ 26.

United States District Court
Northern District of California

Born in Utah, Plaintiff had a "conservative Mormon upbringing."  *Id.* ¶ 12.  While an undergraduate at Brigham Young University, Plaintiff "came to the consciousness that he was gay," but coming out was "a challenge," given Plaintiff's background.  *Id.*  As a "recently out young gay man," Plaintiff alleges that he was "intimidated" by Dr. Kapla, who was a "professor" with "the power to affect [Plaintiff's] standing in the [UCSF] community."  *Id.* ¶ 29.  Plaintiff "was emotionally traumatized and contemplated not returning to [UCSF]."  *Id.*

Before, during, and after his clerkship with Dr. Kapla, Plaintiff was a patient of Dr. Vittorio Comelli, a UCSF professor and the Assistant Director of UCSF's Medical Students Well-Being Program.  *Id.* ¶¶ 21–22, 38.  UCSF paid for these therapy sessions.  *Id.* ¶ 23.  At one session with Dr. Comelli, Plaintiff "indicated that . . . he was being treated inappropriately at the Kapla Clinic, and was a victim of sexual harassment."  *Id.* ¶ 24.  Dr. Comelli informed Plaintiff that he was required to report the alleged sexual harassment to Dean Lee Jones and the Title IX office.  *Id.* "As soon as" Dr. Comelli did so, Dean Jones "appropriately guaranteed" Plaintiff that he would not need to return to Dr. Kapla's clinic.  *Id.*; *see id.* ¶¶ 30, 49, 52.

Although UCSF "appropriately removed" Plaintiff from the clinic, *id.* ¶ 14, UCSF was "unable to find a substitute clinic for [Plaintiff] to complete his training immediately," *id.* ¶ 32. Plaintiff "[u]ltimately" did one session in an alternate family medicine clinic, but "the situation was aggravated by his [post-traumatic stress disorder (PTSD)] suffered at the hands of Dr. Kapla, and he was unable to complete the [clerkship]."  *Id.*  The following semester, Plaintiff was "supposed to find himself" another family medicine clerkship, in addition to completing a new rotation in internal medicine.  *Id.* ¶ 33.  Plaintiff believes that he "still has the grade of 'incomplete' " for the family medicine rotation, *id.*, due to UCSF's failures to "assist Plaintiff into a new program," *id.* ¶ 40, and/or to help him "prepar[e] a statement of what occurred at the Kapla Clinic to explain his incomplete grade and his PTSD symptoms," *id.* ¶ 42.  *See id.* ¶ 43.

On October 24, 2017, UCSF's Title IX officer, Andrea LaCampagne, conducted an "Intake Interview" with Plaintiff.  *Id.* ¶ 31.  According to Ms. LaCampagne's interview notes, Plaintiff

3

described Dr. Kapla's alleged misconduct (summarized above) in detail.[2]  *See id.*  Additionally, Plaintiff told Ms. LaCampagne that Dr. Kapla was "intrigued" by Plaintiff's background and "worked hard" to get Plaintiff into his clinic.  *Id.*  Plaintiff explained that he "felt bonded" to Dr. Kapla; although he is usually "quiet about his sexual orientation," he confided in Dr. Kapla that he is gay.  *Id.*  At the same time, Plaintiff felt "trapped" in the clerkship and obligated to stay late "while [Dr. Kapla] talked to him," often about non-medical issues.  *Id.*  Ms. LaCampagne's notes also indicate that Plaintiff's clerkship "was supposed to end in December, but [Plaintiff] left early with 4–5 session [*sic*] left in his clerkship (8–10 weeks early)."  *Id.*

Aside from this interview, Plaintiff alleges, the Title IX office "did little else that [it was] required to do."  *Id.* ¶ 24; *see id.* ¶¶ 3, 41–43, 48–49.  Because Dr. Kapla served as a "volunteer clinical professor," Ms. LaCampagne "remained concerned that [UCSF] 'did not have jurisdiction' " over him.  *Id.* ¶ 34.  Subsequently, Ms. LaCampagne "was relieved of [that] erroneous belief," and she "told Plaintiff that he need not retain a lawyer" and that the Title IX office would "do the work and conduct the investigation."  *Id.*; *see id.* ¶¶ 35, 46.

Ms. LaCampagne referred Plaintiff to Denise Caramagno, a CARE advocate and the Director of Campus Advocacy Resources and Education for sexual assault and gender-based violence at UCSF.  *Id.* ¶ 35.  When Plaintiff asked Ms. Caramagno whether he needed a lawyer, she "told him that she was there as his advocate and referred him to [UCSF's] Care Advocacy Resources and Education website."  *Id.* ¶ 36; *see id.* ¶ 46.  Plaintiff reviewed the website and "believed the representations of Ms. LaCampagne and Ms. Caramagno" that he "did not need to retain counsel."  *Id.* ¶ 37.

In late November 2017 or early January 2018, Plaintiff attended another therapy session with Dr. Comelli.  *Id.* ¶ 38.  When Plaintiff asked Dr. Comelli whether he should hire a lawyer, Dr. Comelli "became agitated at Plaintiff for raising the 'lawyer' issue" and "berated Plaintiff, indicating that that the sexual harassment he experienced at the Kapla Clinic was somehow 'brought on by' or 'invited by' Plaintiff."  *Id.* ¶ 39; *see id.* ¶¶ 38, 47.

---

[2]  A copy of Ms. LaCampagne's notes does not appear in the record.

On October 16, 2018, Ms. LaCampagne sent the following to Plaintiff in an e-mail:[3]

I apologize for the late notice, but as I was reviewing my case files became [*sic*] aware that I did not send you a notice that your complaint was closed by our office. [The Office for the Prevention of Harassment and Discrimination] closed your complaint against Dr. William Kapla, [Volunteer Clinical Faculty], on July 24, 2018.

*Id.* ¶ 41.  Prior to this date, Plaintiff alleges, UCSF had "lulled [him] by constantly advising him that the entire matter would be resolved within the University."  *Id.* ¶ 49.

According to Plaintiff, UCSF's response to his report of sexual misconduct constituted "deliberate indifference."  *Id.* ¶ 40.  Specifically, UCSF's failed to conduct its investigation with "clarity, fairness, or timeliness"; to give him periodic updates on the complaint process; to appropriately discipline or sanction Dr. Kapla; to comply with the University of California's policies and the U.S. Department of Education's guidance; to ensure that Plaintiff's experience of sexual harassment and assault did not cause "potential academic defects in his record" by failing to assist him in finding a second alternate family medicine clerkship and/or in "preparing a statement of what occurred at the Kapla Clinic to explain his incomplete grade and his PTSD symptoms"; and to pay for private therapy after Dr. Comelli's accusations.  *Id.* ¶¶ 40, 42–43; *see id.* ¶¶ 3, 13–15, 17–18, 24, 48–49, 52–53.  Plaintiff also alleges that Dr. Comelli's comments themselves amount to deliberate indifference.  *Id.* ¶¶ 40, 42, 43; *see id.* ¶¶ 38–40, 47, 52.

"As a result of [UCSF's] conduct, and lack of conduct," Plaintiff alleges that he "has suffered psychological and emotional damages, and has experienced a loss of education opportunities and/or benefits."  *Id.* ¶ 43.  Specifically, Plaintiff was "forced" to drop a class and to take a reduced course load the following semester, which required him to "stay in school for extra time."  *Id.*  Furthermore, Plaintiff was diagnosed with PTSD, had "[s]ignificantly higher amounts of absences from classes"; "withdr[ew] from participation in extra curricular [*sic*] activities"; and experienced a "significant reduction in the enjoyment of his academic experience at [UCSF]."  *Id.*  Finally, Plaintiff "avoid[ed] enrollment or participation in . . . activities [for gay students] on campus for fear of seeing Dr. Kapla."  *Id.*

United States District Court
Northern District of California

---

[3]  A copy of this e-mail does not appear in the record.

Prior to Plaintiff's experience of sexual misconduct, in June 2014, the California State Auditor published a report titled "Sexual Harassment and Sexual Violence: California Universities Must Better Protect Students by Doing More to Prevent, Respond to, and Resolve Incidents."[4]  *Id.* ¶ 44.  The report detailed several deficiencies in the University of California's schools' handling of reports of sexual misconduct.  *Id.* ¶ 45.  Additionally, on March 2, 2017, the Chancellor of UCSF, Sam Hawgood, sent a letter addressing sexual misconduct to the members of the UCSF community—including Plaintiff and Dr. Kapla.[5]  *Id.* ¶ 2.  The letter stated that "between January 1, 2013 and April 6, 2016, at the ten campuses of the University of California," there were 113 reported violations of the Title IX Sexual Violence and Sexual Harassment Policy, including 26 cases at UCSF."  *Id.*  In the letter, Chancellor Hawgood assured students that UCSF "ha[d] taken actions to both raise awareness of sexual violence and sexual harassment as well as to protect and support every member of the UCSF community" and that UCSF was committed to "clarity, fairness and timeliness" in its investigations and appropriate "remedies or disciplinary actions" for reports of sexual misconduct.  *Id.*  Plaintiff alleges, "This is a case of [UCSF's] failures of these representations."  *Id.* ¶ 3.

Finally, Plaintiff alleges that UCSF "had an obligation to, and did in fact advise Dr. Kapla of the charges against him by Plaintiff."  *Id.* ¶ 20.  According to "records obtained from UCSF," UCSF would notify Dr. Kapla that he was "no longer a volunteer due to a 'severe' complaint of sexual harassment against him."[6]  *Id.*  Consequently, Plaintiff alleges, Dr. Kapla "had ample opportunity to gather evidence and to avoid prejudice in the event of litigation."  *Id.*

### 2.  Claims Asserted

Plaintiff asserts one federal claim against the Regents: discrimination on the basis of sex in violation of 20 U.S.C. § 1681 ("Title IX") ("Claim One").  Plaintiff's remaining six claims arise under state law and are brought against Dr. Kapla: negligence ("Claim Two"); intentional infliction of emotional distress ("Claim Three"); assault ("Claim Four"); battery ("Claim Five");

---

[4]  In its prior order, the Court took judicial notice of the existence of this report.  Order at 11 n.22; *see* dkt. 20-1 (Plaintiff's request for judicial notice).
[5]  A copy of Dean Hawgood's letter does not appear in the record.
[6]  Copies of these records do not appear in the record.

United States District Court
Northern District of California

sexual harassment ("Claim Six"); and breach of the covenant of good faith and fair dealing ("Claim Seven").

**B.   Regents' Motion**

The Regents move to dismiss Plaintiff's Title IX claim for failure to state a claim.  *See* Regents Mot.  In answer to Plaintiff's allegations concerning UCSF's response to Plaintiff's report of sexual misconduct, the Regents argue that Plaintiff's post-harassment/assault Title IX claim fails because he has not adequately alleged (1) the fourth element that UCSF acted with deliberate indifference and (2) the fifth element that UCSF's alleged deliberate indifference caused Plaintiff to experience further sexual harassment or assault or made him vulnerable to such.  *See id.* at 2, 6–10.  In response to Plaintiff's allegations regarding UCSF's conduct before Plaintiff's was allegedly sexually harassed and assaulted, the Regents argue that any pre-harassment/assault Title IX claim fails because (1) Plaintiff has not adequately alleged causation and (2) equitable tolling cannot save the otherwise-time-barred claim.  *See id.* at 2, 10–13.

**C.   Dr. Kapla's Motion**

In his motion, Dr. Kapla asks the Court to dismiss each of Plaintiff's state claims because they are "time barred on their face."  Kapla Mot. at 1.  Additionally, Dr. Kapla argues that Plaintiff cannot satisfy the necessary elements for the application of equitable tolling—(1) that Dr. Kapla had notice of Plaintiff's claims and intent to litigate, (2) that the application of equitable tolling would not prejudice Dr. Kapla, and (3) that Plaintiff acted reasonably and with good faith.  *See id.* at 4–9.

**D.   Plaintiff's Oppositions**

In his opposition to the Regents' motion, Plaintiff contends that he has adequately alleged the fourth and fifth elements of his post-harassment/assault Title IX claim.  *See* Opp'n to Regents Mot. (dkt. 43) at 1–8.  Plaintiff also argues that equitable tolling does apply to his Title IX claim, but he does not distinguish between the pre- and post-harassment/assault theories of liability, and he does not respond to the Regents' argument that he has failed to adequately allege causation in support of any pre-harassment/assault claim.  *See id.* at 8–10.  In his opposition to Dr. Kapla's

motion, Plaintiff contends that he has alleged the necessary elements for the application of

equitable tolling to his state claims.[7]  *See* Opp'n to Kapla Mot. (dkt. 45).

### E.  Defendants' Replies

In their replies, the defendants generally repeat the arguments that they raised in their

motions.  *See* Regents Reply (dkt. 46); Kapla Reply (dkt. 47).  The Regents also contend that

Plaintiff has "effectively abandon[ed]" any pre-harassment/assault Title IX claim by failing to

"address any pre-harassment conduct" by UCSF in his opposition to the Regents' motion.  *See*

Regents Reply at 1, 5 (citation omitted).

### III.  ANALYSIS

### A.  Legal Standards Under Rule 12(b)(6)

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure

for failure to state a claim upon which relief can be granted.  "The purpose of a motion to dismiss

under Rule 12(b)(6) is to test the legal sufficiency of the complaint."  *N. Star Int'l v. Ariz. Corp.*

*Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  Generally, a plaintiff's burden at the pleading stage

is relatively light.  Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which

sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing

that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and

takes "all allegations of material fact as true and construe[s] them in the light most favorable to the

non-moving party."  *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that

would support a valid theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

1990).  A complaint must "contain either direct or inferential allegations respecting all the material

United States District Court
Northern District of California

---

[7]  Plaintiff also argues that Dr. Kapla's motion should be denied because it was untimely filed.
*See* Opp'n to Kapla Mot. at 1.  Under Federal Rule of Civil Procedure 12(a)(1)(A)(i), a defendant
may file a motion to dismiss a complaint "within 21 days after being served with the summons and
complaint."  According to Plaintiff's counsel's certification of service attached to the end of the
Second Amended Complaint, Dr. Kapla was served on October 16, 2016.  SAC at 32.  Dr. Kapla's
motion was timely filed on November 6, the 21st day after he was served.  *See Rasooly v. Cal.*,
No. 14-cv-04521-JSC, 2015 WL 1222167, at *4 n.5 (N.D. Cal. Mar. 17, 2015).

elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).  "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.' " *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original).  Rather, the claim must be " 'plausible on its face,' " meaning that the plaintiff must plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

If the expiration of the applicable statute of limitations is apparent from the face of the complaint, the defendant may raise a statute of limitations defense in a Rule 12(b)(6) motion to dismiss. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980).  This is true even though expiration of the limitations period is an affirmative defense, because Rule 9(f) of the Federal Rules of Civil Procedure "makes averments of time and place material for the purposes of testing the sufficiency of a complaint." *Suckow Borax Mines Consol. v. Borax Consol.*, 185 F.2d 196, 204 (9th Cir. 1950).  When a motion to dismiss is based on the running of the statute of limitations, "it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Jablon*, 614 F.2d at 682.  In contrast, where the statute of limitations question turns on factual issues that may be disputed, the question is more appropriately addressed at a later stage of the proceeding. *See id.*

**B.    Whether Plaintiff's Title IX Claim (Claim One) Fails to State a Title IX Claim**

**1.    Elements of a Title IX Claim**

Title IX of the Education Amendments of 1972 provides, with certain exceptions not at issue here, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education

United States District Court
Northern District of California

program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). A victim of sex discrimination has a private right of action against a recipient of federal education funding for alleged Title IX violations. *Cannon v. Univ. of Chi.*, 441 U.S. 677, 709 (1979). But a funding recipient "may be liable in damages under Title IX only for its own misconduct"; in other words, the funding recipient itself must " 'exclud[e] [persons] from participation in, . . . den[y] [persons] the benefits of, or . . . subjec[t] [persons] to discrimination under' its 'program[s] or activit[ies]' " in order to be liable for damages under Title IX. *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 640–41 (1999) (quoting 20 U.S.C. § 1681(a)). In order "to eliminate 'any risk that the recipient would be liable in damages not for its own official decision but instead for its employees' independent actions,' " the Supreme Court has "imposed" the "high standard" of "deliberate indifference" for damages liability. *Id.* at 643 (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290–91 (1998)). Accordingly, a recipient is subject to damages liability only if it has an "official policy" that discriminates on the basis of sex *or* if "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs" and responds with "deliberate indifference." *Gebser*, 524 U.S. at 290.

Recently, in *Karasek v. Regents of University of California*, 956 F.3d 1093 (9th Cir. 2020), the Ninth Circuit listed the elements of a Title IX claim arising from student-on-student or faculty-on-student sexual harassment or assault.[8] To state a *post*-harassment/assault claim—based on an educational institution's deliberate indifference to a plaintiff's experience of sexual harassment or assault—the plaintiff must allege the following:

> First, the school must have "exercise[d] substantial control over both the harasser and the context in which the known harassment occur[red]." *Davis*, 526 U.S. at 645. Second, the plaintiff must have suffered harassment "that is so severe, pervasive, and objectively offensive that it can be said to deprive the [plaintiff] of access to the educational opportunities or benefits provided by the school." *Id.* at 650. Third, a school official with "authority to address the alleged discrimination and to institute corrective measures on the [school's] behalf" must have had "actual knowledge" of

---

[8] *Karasek* clarified that these elements are "in addition to the threshold requirements that the defendant be a recipient of '[f]ederal financial assistance' and that the plaintiff experienced sex discrimination." 956 F.3d at 1105 n.1.

the harassment. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 739 (9th Cir. 2000); *see Davis*, 526 U.S. at 650. Fourth, the school must have acted with "deliberate indifference" to the harassment, such that the school's "response to the harassment or lack thereof [was] clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648. . . . And fifth, the school's deliberate indifference must have "subject[ed the plaintiff] to harassment." *Id.* at 644. Put differently, the school must have "cause[d the plaintiff] to undergo harassment or ma[d]e [the plaintiff] liable or vulnerable to it." *Id.* at 645 (internal quotation marks omitted).

*Karasek*, 956 F.3d at 1105.[9] Meanwhile, to state a *pre*-harassment/assault claim—based on an educational institution's conduct prior to a plaintiff's experience of sexual harassment or assault—the plaintiff may allege:

(1) a school maintained a policy of deliberate indifference to reports of sexual misconduct, (2) which created a heightened risk of sexual harassment that was known or obvious (3) in a context subject to the school's control, and (4) as a result, the plaintiff suffered harassment that was "so severe, pervasive, and objectively offensive that it can be said to [have] deprive[d] the [plaintiff] of access to the educational opportunities or benefits provided by the school."

*Id.* at 1112 (quoting *Davis*, 526 U.S. at 650). Because a pre-harassment/assault claim is based on the theory that a school has intentionally violated Title IX by maintaining a policy that discriminates on the basis of sex—such as a policy of deliberate indifference to past reports of sexual misconduct[10]—a plaintiff is not required to allege that the school had actual knowledge that the plaintiff experienced sexual harassment or assault or that the school responded with deliberate indifference to the plaintiff's experience of sexual harassment or assault. *Id.* at 1112–13.

Because the Second Amended Complaint includes allegations about UCSF's conduct both before and after Plaintiff's alleged experience of sexual harassment and assault, the Court considers whether Claim One fails to state claim under both the pre- and the post-harassment/assault theories of Title IX liability.

---

[9] Some courts have referred to *Karasek*'s fourth and fifth elements as a single element. Following *Karasek*, this Court refers to the requirement that the school responded with deliberate indifference as the "fourth element" and to the requirement that the deliberate indifference caused the plaintiff to experience harassment or assault or made them vulnerable to such as the "fifth element."

[10] *Karasek* held that a school's "deliberate indifference to reports of past sexual misconduct" satisfies the first element, but also suggested that other "form[s] of pre-assault conduct" may do so as well. *Karasek*, 956 F.3d at 1112 n.5.

### 2.   Whether Claim One Fails to State a Post-Harassment/Assault Title IX Claim

In their present motion, the Regents argue that Plaintiff's post-harassment/assault Title IX claim fails because he has not adequately alleged (1) the fourth element that UCSF acted with deliberate indifference and (2) the fifth element that UCSF's alleged deliberate indifference caused him to experience further sexual harassment or assault or made him vulnerable to such.  *See* Regents Mot. at 2, 6–10; Regents Reply at 1–4.  According to the Regents, Plaintiff acknowledges that, following his report of sexual misconduct, UCSF: (1) promptly removed Plaintiff from Dr. Kapla's clinic; (2) removed Dr. Kapla from his Volunteer Clinical Faculty position; (3) placed Plaintiff in a new family medicine clerkship—although Plaintiff was unable complete this clerkship due to his PTSD; (4) assigned Plaintiff a CARE advocate; and (5) gave Plaintiff access to "free therapy (despite his disagreement with his therapist)."  Regents Mot. at 8; *see id.* 1–8 & n.1; *see also* SAC ¶¶ 14, 20, 23–24, 30, 32, 36, 49, 52.  Consequently, the Regents, citing *Karasek*, 956 F.3d 1093, and *Oden v. Northern Marianas College*, 440 F.3d 1085 (9th Cir. 2006), contend that Plaintiff has not and cannot plausibly allege that UCSF's response was deliberately indifferent.  *See* Regents Mot. at 6–8.  Additionally, because Dr. Kapla "worked in a community-based clinic, which was not located on campus," and because Plaintiff "does not allege that he had any further interaction with Dr. Kapla . . . or that he ever saw him on campus," the Regents argue that any failure to implement protective measures does not amount to deliberate indifference.  *Id.* at 9; *see id.* at 4, 8–9.  Finally, the Regents claim that Plaintiff has not alleged that he experienced or was made vulnerable to further sexual harassment or assault—"the only harms are actionable under Title IX."  *Id.* at 10; *see id.* at 9–10.

In his opposition, Plaintiff recognizes that Dean Jones "arranged to have Plaintiff leave the Kapla Clinic even before the matter was reported to the Title IX Officer on campus," Opp'n to Regents Mot. at 7, and that he had no further contact with Dr. Kapla, *id.* at 6.  Nevertheless, he asks this Court to follow *Fitzgerald v. Barnstable School Committee*, 504 F.3d 165 (1st Cir. 2007), *rev'd on other grounds*, 555 U.S. 246 (2009), and *Williams v. Board of Regents of University System of Georgia*, 477 F.3d 1282 (11th Cir. 2007), and conclude that Plaintiff remained vulnerable to further harassment and assault, even though he never actually experienced further

sexual harassment or assault by Dr. Kapla. *Id.* at 3–6. Citing six cases, Plaintiff also claims that courts frequently have refused to grant motions to dismiss on "similar" facts. *Id.* at 6–7 (citing cases). Notably, in *Takla v. Regents of the University of California*, No. 2:15-cv-04418-CAS(SHx), 2015 WL 6755190, at *6 (C.D. Cal. Nov. 2, 2015), the court found it "premature" to dismiss the plaintiff's post-harassment Title IX claim because the allegations could amount to deliberate indifference when "taken together," even if they could not do so when "taken individually." *Id.* at 7. Lastly, Plaintiff contends that Dr. Comelli's remarks themselves constitute "further sexual harassment."[11] *Id.* at 1, 8.

In their reply, the Regents argue that Plaintiff's reliance on *Fitzgerald* is misplaced, because the First Circuit affirmed the district court's grant of summary judgment to the defendant school committee on deliberate indifference grounds, and because the Supreme Court later "overruled" the First Circuit's decision. Regents Reply at 3 (citations omitted). Additionally, the Regents contend that *Williams* does "not stand for the proposition that Plaintiff asserts," because that decision focused on "pre-harassment conduct, not just post-harassment vulnerability," and because the Eleventh Circuit noted that " 'the facts alleged . . . [were] extreme.' " *Id.* at 4 (quoting *Williams*, 477 F.3d at 1299). In response to Plaintiff's arguments regarding Dr. Comelli, the Regents claim that Plaintiff fails to allege that Dr. Comelli "subjected him to or made him more vulnerable to sexual harassment or assault." *Id.* at 4 (citations omitted). Although Plaintiff alleges "a laundry list of harms," the Regents argue, these harms are "different" from those required to satisfy the fifth element of a post-harassment/assault Title IX claim. *Id.*

---

[11] In his opposition to the Regents' motion, Plaintiff argues that Dr. Comelli had a conflict of interest because he was a colleague of Dr. Kapla and that he therefore violated the American Mental Health Counselors Association Code of Ethics and the California Constitution by treating Plaintiff without a conflict waiver. Opp'n to Regents Mot. at 8. Relatedly, Plaintiff requests judicial notice of (1) the American Mental Health Counselors Association Code of Ethics and (2) Article I, Section 28 of the California Constitution. *See* Req. for Judicial Notice (dkt. 44). The Court takes judicial notice of the existence of these materials, but it does not draw inferences from them, nor does it take notice of facts that might reasonably be disputed. *See United States v. Corinthian Colls.*, 655 F.3d 984, 998–99 (9th Cir. 2011) (at the motion to dismiss stage, taking judicial notice of the existence of documents but not "draw[ing] inferences [therefrom] or tak[ing] notice of facts that might reasonably be disputed").

### i. Whether Plaintiff has Adequately Alleged Deliberate Indifference

Deliberate indifference "is a fairly high standard—a 'negligent, lazy, or careless' response will not suffice." *Karasek*, 956 F.3d at 1105 (quoting *Oden*, 440 F.3d at 1089). Instead, a plaintiff "must demonstrate that the school's actions amounted to ' "an official decision . . . not to remedy" ' the discrimination." *Id.* (quoting *Oden*, 440 F.3d at 1089 (citation omitted)). In other words, " 'the recipient must merely respond . . . in a manner that is not clearly unreasonable.' " *Id.* (quoting *Davis*, 526 U.S. at 649). "Absent an unreasonable response, [courts] cannot 'second-guess[ ] the disciplinary decisions made by school administrators.' " *Id.* (quoting *Davis*, 526 U.S. at 648). And "the reasonableness of the response depends on the educational setting involved— what would be unreasonable in the context of an elementary school might not be unreasonable in the context of a university. *Id.* (citing *Davis*, 526 U.S. at 649). Accordingly, the Supreme Court "has emphasized that Title IX 'does not mean that recipients can avoid liability only by purging their schools of actionable peer harassment or that administrators must engage in particular disciplinary action.' " *Id.* (citing *Davis*, 526 U.S. at 648).

"Generally, deliberate indifference is a fact-intensive inquiry and is often a question for the jury's determination." *Lilah R. ex rel. Elena A. v. Smith*, No. 11-01860 MEJ, 2011 WL 2976805, at *5 (N.D. Cal. Jul. 22, 2011) (citations omitted). "[I]n an appropriate case," however, "there is no reason why courts, on a motion to dismiss, for summary judgment, or for a directed verdict, could not identify a response as not 'clearly unreasonable' as a matter of law." *Id.* (quoting *Davis,* 526 U.S. at 649).

### a. UCSF's Alleged Failures in Handling Plaintiff's Report, Disciplining Dr. Kapla, and Taking Steps to Protect Plaintiff

The Court begins by considering Plaintiff's allegations that UCSF mishandled his report of sexual misconduct, including by violating the University of California's "sexual violence and sexual harassment" policies and the U.S. Department of Education's Title IX guidance provided in its "Dear Colleague Letter" and its "Questions and Answers on Campus Sexual Misconduct" that replaced the Dear Colleague Letter on September 22, 2017. *See* SAC ¶¶ 13–15, 17–18, 24, 37, 42–43, 52–53. In this section, the Court also considers Plaintiff's allegation that UCSF failed to

"appropriately discipline or sanction Dr. Kapla," *id.* ¶ 40; *see id.* ¶ 42, and his related allegation that he "avoid[ed] enrollment or participation in . . . activities [for gay students] on campus for fear of seeing Dr. Kapla," *id.* ¶ 43.

Although Plaintiff has not identified the specific provisions that UCSF allegedly violated, he has alleged that UCSF failed to conduct its investigation with "clarity, fairness, or timeliness" and to give him "periodic update[s] on the complaint process." *Id.* ¶ 43; *see id.* ¶¶ 3, 48.  Based on these and Plaintiff's other allegations, the Court identifies the alleged policy provisions that appear most relevant.  First, the Dear Colleague Letter allegedly stated that schools must "take immediate action" to "address a complaint of sexual harassment/assault," "prevent its reoccurrence," "protect the complainant," and "notify the complainant of his or her options to avoid contact with the alleged perpetrator." *Id.* ¶ 13.  Further, schools must give the parties to a complaint "periodic status updates" and "an equal opportunity to present relevant witnesses and other evidence." *Id.* Second, the "Questions and Answers on Campus Sexual Misconduct" allegedly provides that the school must "make findings of fact and conclusions as to whether the facts support a finding of responsibility for violation of the school's sexual misconduct policy"; "offer each party the same meaningful access to any information that will be used during informal and formal disciplinary meetings and hearings, including the investigation report"; give the parties an "opportunity to respond to the report in writing in advance of the decision of responsibility"; and "provide written notice of the outcome of disciplinary proceedings to the reporting and responding parties concurrently." *Id.* ¶ 15.  Additionally, "[i]t may be appropriate for a school to take interim measures," such as "campus escort services, restrictions on contact between the parties, changes in work or housing locations, leaves of absence, [and] increased security and monitoring of certain areas of campus." *Id.*  Third, the Plaintiff alleges that UCSF's CARE Advocacy Resources and Evaluation website provides in part:

> Under the UC Sexual Violence and Sexual Harassment Policy (SVSH Policy), the campus Title IX office conducts a fair, thorough and impartial investigation to determine if the SVSH Policy was violated.  Both the person who filed the complaint (complainant) and the person responding to allegations (respondent) are notified of the investigation's findings and have the opportunity to submit a response.

United States District Court
Northern District of California

1    *Id.* ¶ 37.  Also, the University of California's "sexual violence and sexual harassment policies,"

2    effective January 1, 2016, allegedly provide that the Title IX Officer "shall make an immediate

3    assessment concerning the health and safety of the individual and the campus community,

4    implement temporary remedies immediately necessary (including no contact orders), and provide

5    to the Complainant a written explanation of rights and reporting options . . . and available campus

6    and community resources." *Id.* ¶ 17.  Lastly, these policies have several additional requirements

7    for involving and notifying the parties in "formal investigations."  *Id.*

8         Given its relevance and binding authority, *Karasek*, 956 F.3d 1093, guides the Court's

9    analysis.  In that case, two of the plaintiffs, Ms. Karasek and Ms. Commins, brought pre- and post-

10    assault Title IX claims against the Regents after allegedly being sexually assaulted by other

11    students at the University of California, Berkeley.  In support of their post-assault claims, the

12    plaintiffs alleged that the university responded to their reports of sexual assault with deliberate

13    indifference (1) by unjustifiably delaying its investigations; (2) by failing to communicate with the

14    plaintiffs and to afford them opportunities to participate in the investigations, in violation of the

15    university's policies and the U.S. Department of Education's Title IX guidance; and (3) by failing

16    to take adequate steps to protect the plaintiffs from their assailants after they had reported the

17    sexual assaults.  *Id.* at 1106, 1109.  The district court held that the plaintiffs failed to adequately

18    allege deliberate indifference, and the Ninth Circuit affirmed.  *Id.* at 1106.

19         Specifically, Ms. Karasek alleged that she was sexually assaulted by another member of a

20    student club in February 2012; that a university official was informed of her assault the same

21    month; that she "formally reported" her assault in April 2012; that she submitted a written report

22    in May 2012; and that she met with a university official in November 2012 to "voice her

23    concerns" that the university "was not timely handling her complaint" because she "had received

24    no communications" from the university since filing her written statement in May.  *Id.* at 1099–

25    1100.  In December 2012, after Ms. Karasek "sent several more e-mails," the university responded

26    with two e-mails: the first informed her that the matter had been informally resolved, but did not

27    describe the outcome; the second informed her that her assailant had violated the "Code of Student

28    Conduct," but did not describe any disciplinary actions.  *Id.* at 1101.  In October 2012, Plaintiff's

assailant had "accepted responsibility" for violating the Code of Student Code and received sanctions in the form of disciplinary probation, one consultation with a mental health practitioner, and one meeting with an alcohol and other drugs counselor, but Ms. Karasek did not learn of these sanctions until September 2013—nearly a year later.  *Id.* at 1100–01.

Meanwhile, Ms. Commins alleged that she was sexually assaulted in January 2012 and that she reported the assault to the university the following day and to the university's police department soon thereafter.  *Id.* at 1101.  On January 31, 2012, the University placed her assailant on "interim suspension, prohibiting him from entering campus."  *Id.*  In February 2012, Ms. Commins submitted an incident report, but the university informed Ms. Commins that it would not conduct its own investigation until the police had finished theirs.  *Id.*  After Ms. Commins's assailant was convicted of felony assault in October 2012, the university informed Ms. Commins that it would hold a formal hearing, but no such hearing was held.  *Id.*  In the spring of 2013, the university informed Ms. Commins that her assailant had violated the university's "Policy on Sexual Harassment."  *Id.*  After Ms. Commins expressed her preference that her assailant be expelled, the university told her that her expulsion was not possible; so, she reluctantly agreed to his suspension until her graduation.  *Id.*  Her assailant was also excluded from campus, prohibited from contacting her, placed on permanent disciplinary probation, and required to complete a reflective writing assignment.  *Id.*  But because the university sent an e-mail to an incorrect address, Ms. Commins did not learn of these sanctions until she requested an update four months later.  *Id.* at 1102.  After Ms. Commins was accepted into one of the university's graduate programs, she requested that her assailant's suspension be extended while she pursued graduate studies.  *Id.*  The university denied her request, but the no-contact order remained in place, and Ms. Commins's did not allege that she saw her assailant again.  *Id.*

First, *Karasek* explained that a school's "delayed response constitutes deliberate indifference if it prejudices the plaintiff or if the delay was a 'deliberate attempt to sabotage [the p]laintiff's complaint or its orderly resolution.' "  *Id.* at 1106 (quoting *Oden*, 440 F.3d at 1089) (alteration in original).  The court concluded that neither the eight-and-a-half-month delay in resolving Ms. Karasek's case nor the thirteen-month delay in resolving Ms. Commins's case

17

constituted deliberate indifference, given the university's interim actions. *Id.* at 1106–07, 1109–10. In Ms. Karasek's case, the university met with the student club's president, met with Ms. Karasek's assailant, and issued several "Administrative Disposition Letters" informing her assailant that he had violated the Student Code of Conduct and proposing sanctions. *Id.* at 1106. In Ms. Commins's case, the university placed her assailant on interim suspension and barred him from campus. *Id.* at 1109.

On the one hand, *Karasek* analogized the plaintiffs' cases to *Oden*, 440 F.3d 1085, where the Ninth Circuit held that a nine-month delay before holding a formal hearing in the plaintiff's case did not constitute deliberate indifference, because the college "began to act as soon as it became aware of Plaintiff's allegations" that her music teacher was sexually harassing and assaulting her, and because there was "no evidence in the record that the delay prejudiced [the plaintiff]." *Oden*, 440 F.3d at 1089; *see Karasek*, 956 F.3d at 1106–07, 1109–10. In *Oden*, the college assigned the plaintiff two counselors who met with her more than a dozen times, assisted her in filing a formal complaint, and helped her drop a class with the assailant. *Oden*, 440 F.3d at 1089. Additionally, the college instructed the assailant not to contact the plaintiff and, after the hearing took place, "significantly disciplined" him by suspending him without pay for four weeks, denying him a raise for one year, prohibiting him from engaging in one-on-one instruction for two years, putting him on probation for five years, and placing a letter of reprimand in his personnel file. *Id.*; *see id.* at 1087–88.

On the other hand, *Karasek* distinguished *Williams*, 477 F.3d 1282, one of the cases relied on by Plaintiff. *See Karasek*, 956 F.3d at 1106–07, 1109–10; Opp'n to Regents Mot. at 4–6. In *Williams*, the University of Georgia did not hold a disciplinary hearing for eleven months after the plaintiff reported that she had been gang-raped by members of the basketball team, despite a comprehensive report by the university's police department "within a few months of the assault" that largely corroborated the plaintiff's allegations. *Karasek*, 956 F.3d at 1106 (citing *Williams*, 477 F.3d at 1296–97). *Karasek* explained that in *Williams*, the "level of indifference [was] far more extreme" and clearly prejudiced the plaintiff because "several of the plaintiff's assailants no longer attended the university" by the time the hearing was held. *Id.* (citing *Williams*, 477 F.3d at

1296).  Meanwhile, in *Karasek*, the court concluded that the delays were not clearly unreasonable and did not prejudice the plaintiffs.  *Id.* at 1107, 1109–10.

Second, *Karasek* explained, "Ordinarily, a school's 'failure to comply with [U.S. Department of Education] regulations . . . does not establish . . . deliberate indifference.'  The same is true of a school's violations of its own policies."  *Id.* at 1107 (quoting *Gebser*, 524 U.S. at 291–92, and citing *Oden*, 440 F.3d at 1089).  The court recognized that the university's alleged conduct "was inconsistent" with both the U.S. Department of Education's Dear Colleague Letter and its own policies because it had not afforded the plaintiffs "an equal opportunity to present relevant witnesses and other evidence," given them "periodic status updates," promptly notified them "about the outcome of both the complaint and any appeal," resolved their sexual-assault complaints within 60 days, or consulted with them before resolving their cases informally.  *Id.* at 1107; *see id.* at 1107–10.  Nevertheless, the university's noncompliance did not constitute deliberate indifference in Ms. Karasek's case because it had investigated her complaint, met with her assailant, and eventually imposed arguably appropriate sanctions, and in Ms. Commins's case because it had placed her assailant on interim suspension and barred him from campus.  *Id.* at 1107–10.  Along the same lines, the court noted that, while the university's "lack of communication" with Ms. Karasek was "inexcusable," it did not amount to deliberate indifference because the university "acted on [her] complaint and imposed arguably appropriate sanctions on [her assailant]."  *Id.* at 1109.  Similarly, the court described the university's "general lack of communication" with Ms. Commins as "likely a significant failing," its decision to resolve her complaint "informally without allowing [her] to testify or present evidence" as "troubling," and its decisions not to expel her assailant and not to extend his suspension while she pursued graduate studies as questionable.  *Id.* at 1110.  Nevertheless, the court reasoned that these decisions were not deliberately indifferent because the university also "moved quickly to suspend her assailant" and "imposed fairly stringent sanctions upon resolution of [her] complaint."  *Id.*

Third, *Karasek* concluded that the university's alleged failures to take adequate steps to protect the plaintiffs from their assailants were insufficient to support deliberate indifference.  *Id.* at 1108–09, 1110.  Although the university was "aware that multiple women reported being

sexually assaulted" by Ms. Karasek's assailant, the court reasoned that the university's failure to take any measures to protect her was not clearly unreasonable given that there was "no indication" that Ms. Karasek had informed the University that she "regularly saw" her assailant and the university therefore "had no reason to know that preventative measures were necessary to protect [her] from future harassment," and given that Ms. Karasek never interacted with her assailant again, "aside from seeing him from afar on one occasion." *Id.* at 1108, 1109. Additionally, because the university had issued an interim suspension of Ms. Commins's assailant "within two weeks" of her report of sexual assault and a no-contact order as part of its final sanctions, and because Ms. Commins did not allege these protective measures were "ineffective" or that she ever saw her assailant again, the university's actions to protect Ms. Commins did not constitute deliberate indifference. *Id.* at 1110.

The Court observes that, aside from interviewing Plaintiff on October 23, 2017, it is unclear what steps UCSF took to investigate the alleged sexual misconduct after Dr. Comelli reported it to Dean Jones in August 2017 and before UCSF closed Plaintiff's case on July 24, 2018. *See* SAC ¶¶ 24, 41. It is also unclear whether UCSF's investigation ever reached a conclusion as to whether Dr. Kapla violated the sexual misconduct policy or whether it simply determined that it "did not have jurisdiction" over Dr. Kapla (as Ms. LaCampagne had been concerned). *Id.* ¶ 34. As it appears in the operative complaint, Ms. LaCampagne's October 18, 2018 e-mail does not reference any factual findings, conclusions, disciplinary actions, or options to respond or appeal. *Id.* ¶ 41. So, even though Plaintiff alleges that UCSF promptly removed him from Dr. Kapla's clinic, it is not clear when UCSF removed Dr. Kapla from his position as a Volunteer Clinical Faculty member and whether they ever informed Plaintiff that they had done so. *See id.* ¶ 20 ("*Records obtained from UCSF* confirm that UCSF *would* notify Dr. Kapla that he [was] no longer a volunteer due to a 'severe' complaint of sexual harassment against him.") (italics added). That said, Plaintiff acknowledges that Dean Jones promptly removed him from Dr. Kapla's clinic, that Ms. LaCampagne interviewed him and referred him to Ms. Caramagno, that Ms. Caramagno referred him to the CARE Advocacy Resources and Education website, and that (at least according to the website) Ms. Caramagno and the CARE Advocate Office were

available if Plaintiff needed support or services during the investigation and adjudication process. *Id.* ¶¶ 14, 20, 24, 31, 35–37, 49, 52. Consequently, Plaintiff's allegations that UCSF mishandled his report of sexual misconduct, inadequately disciplined Dr. Kapla, and took inadequate steps to protect him from Dr. Kapla are insufficient to demonstrate that UCSF responded with deliberate indifference.

First, Plaintiff alleges that UCSF failed to conduct its investigation into his report with "timeliness." *Id.* ¶ 43. Although the fourteen-month delay in resolving Plaintiff's complaint and notifying him that his case had been closed appears unjustified, similar delays in *Karasek* did not amount to deliberate indifference, given the university's interim actions and that the plaintiffs had not alleged that they were prejudiced by the delays. *Karasek*, 956 F.3d at 1106, 1109–10. In light of UCSF's actions and the lack of alleged prejudice to Plaintiff, the same conclusion follows here.[12]

Second, UCSF's alleged failure to keep Plaintiff apprised of the status of his case while it was pending and its subsequent failure to inform Plaintiff of the results of its investigation—likely in violation of the University of California's policies and the U.S. Department of Education's Title IX guidance—are, in a word, "inexcusable." *Id.* at 1109. In *Karasek*, however, the university failed to provide Ms. Karasek with any updates for the several months and only contacted her after it had reached its conclusion, and the university failed to inform either Ms. Karasek or Ms. Commins of the disciplinary actions taken against the respondents until long after their cases had been closed. *See id.* at 1101, 1102. Nevertheless, the Ninth Circuit concluded that the university's responses did not constitute deliberate indifference because the university "acted on [Ms. Karasek's] complaint and imposed arguably appropriate sanctions on [her assailant]" and "moved quickly to suspend [Ms. Commins's] assailant, and . . . imposed fairly stringent sanctions upon resolution of [her] complaint." *Id.* at 1109, 1110. Here, UCSF promptly removed Plaintiff from Dr. Kapla's clinic, removed Dr. Kapla from his position as a Volunteer Clinical Faculty member,

---

[12] In its equitable tolling analysis, the Court considers Plaintiff's alleged reliance on UCSF officials' statements that he need not retain a lawyer while UCSF conducted its investigation. *See infra* Section III.C.2.c.; *see also* SAC ¶¶ 34–39, 46–47, 49.

interviewed Plaintiff, and assigned him a CARE Advocate.  Further, Plaintiff has not alleged that he ever requested an update on case—unlike Ms. Karasek, who repeatedly reached out to the university.  *See id.* at 1100.  Thus, Plaintiff's allegations in this regard do not amount to deliberate indifference.

Third, Plaintiff has alleged that UCSF failed to "appropriately discipline or sanction Dr. Kapla."  SAC ¶ 40; *see id.* ¶ 42.  In *Karasek*, the plaintiffs' challenged the university's decisions to allow Ms. Karasek's assailant to attend the university's summer program while its investigation was pending and to not expel Ms. Commins's assailant or extend his suspension while she pursued graduate studies at the university.  *Karasek*, 956 F.3d at 1109, 1110.  The Ninth Circuit concluded that these decisions did not demonstrate deliberate indifference because the university imposed "arguably appropriate sanctions" on Ms. Karasek's assailant and "fairly stringent sanctions" on Ms. Commins's assailant.  *Id.* at 1109, 1110.  Again, the same conclusion follows here; Plaintiff acknowledges that Dr. Kapla was removed from his position as a Volunteer Clinical Faculty member, *see* SAC ¶ 20, and he fails to identify alternative or additional disciplinary actions that would have been more appropriate.  *See Karasek*, 956 F.3d. at 1105 (quoting *Davis*, 526 U.S. at 648) ("Absent an unreasonable response, [courts] cannot 'second-guess[ ] the disciplinary decisions made by school administrators.' ").  Even if he had, " '[a]n aggrieved party is not entitled to the precise remedy that he or she would prefer.' " *Id.* at 1109 (quoting *Oden*, 440 F.3d at 1089).

Plaintiff also alleges that he "avoid[ed] enrollment or participation in . . . activities [for gay students] on campus for fear of seeing Dr. Kapla."  SAC ¶ 43.  Analogously, Ms. Karasek alleged that the university's failure to take any actions to protect her from her assailant after she reported the assault was clearly unreasonable, especially given that the university "was aware that multiple women reported being sexually assaulted by him."  *Karasek*, 956 F.3d at 1108.  The Ninth Circuit disagreed because there was "no indication" that Ms. Karasek ever informed the university that she regularly encountered her assailant and, after she reported the assault, she only saw him once "from afar."  *Id.* at 1109.  Similarly, in the Second Amended Complaint, there is no indication that Plaintiff ever informed UCSF that he had encountered Dr. Kapla outside of his clerkship, and

Plaintiff recognizes that he never encountered Dr. Kapla after he was removed from his clinic. *See* Opp'n to Regents Mot. at 6. UCSF therefore "had no reason to know that [additional] preventative measures were necessary to protect Plaintiff from future harassment [or assault]," *Karasek*, 956 F.3d at 1109, and the present case is indistinguishable from *Karasek*.

> **b.** **UCSF's Alleged Failure to Provide Plaintiff with Adequate Support and Services**

The Court next considers Plaintiff's allegations that UCSF failed to provide him with adequate support and services. First, Plaintiff alleges that UCSF failed to ensure that Plaintiff's experience of sexual harassment and assault did not cause "potential academic defects in his record" by failing to assist him in finding a second alternate family medicine clerkship and/or in "preparing a statement of what occurred at the Kapla Clinic to explain his incomplete grade and his PTSD symptoms." SAC ¶ 42; *see id.* ¶¶ 32–33, 43, 49. Second, Plaintiff alleges that Dr. Comelli's accusations that Plaintiff "invited" the alleged sexual misconduct constitute deliberate indifference. *Id.* ¶¶ 40, 42–43; *see id.* ¶¶ 38–39, 47, 52. Third, Plaintiff alleges that UCSF acted with deliberate indifference by failing to "help[] him deal with the negative effects" of the alleged sexual misconduct, *id.* ¶ 49, and by failing to pay for private therapy after Dr. Comelli's accusations, *id.* ¶ 43. Relatedly, the Dear Colleague Letter allegedly stated that a school "must take immediate action" to "address" the effects of sexual harassment/assault and that remedies may include "tutoring," "[t]uition reimbursement," and "[r]eimbursement for psychological counseling." *Id.* ¶ 13. Also, the "Questions and Answers on Campus Sexual Misconduct" allegedly provides that "[i]t may be appropriate for a school to take interim measures," such as "counseling, extensions of time or other course-related adjustments, [and] modifications of work or class schedules." *Id.* ¶ 15. Further, "The measures needed by each student may change over time, and the Title IX Coordinator should communicate with each student throughout the investigation to ensure that any interim measures are necessary and effective based on the students' evolving needs." *Id.*

Despite UCSF's alleged failure to provide adequate support and services, Plaintiff acknowledges that it did make some accommodations—Plaintiff was assigned to an alternate

family medicine clerkship and took a reduced course load during the spring semester—and it did provide him with some services—Plaintiff was assigned a CARE advocate and provided free therapy with Dr. Comelli.  *Id.* ¶¶ 23, 32, 35–38, 43.  Additionally, while Plaintiff alleges that UCSF failed to "help[] him deal with the negative effects" of the alleged sexual misconduct, *id.* ¶ 49, he has not alleged that he ever requested any additional or alternative support or services—such as assistance in finding a second alternate family medicine clerkship, assistance in curing his incomplete grade for the family medicine rotation, a new therapist, or reimbursement for private therapy.  Lastly, although Dr. Comelli's alleged remarks are offensive, unprofessional, and unreasonable, Plaintiff has not alleged that Dr. Comelli had any control over UCSF's response to Plaintiff's report of sexual misconduct; that Ms. LaCampagne,  Ms. Caramagno, or any other UCSF officials were aware of the incident; or that any UCSF officials had any reason to anticipate that Dr. Comelli—who began treating Plaintiff before his clerkship with Dr. Kapla and who initially reported Dr. Kapla's alleged sexual misconduct—would make such statements.  Consequently, even when UCSF's alleged failures are taken together with Dr. Comelli's alleged outburst, they do not demonstrate a deliberately indifferent response in light of the accommodations and services provided to Plaintiff.  *See Stiles ex rel. D.S. v. Grainger Cty.*, 819 F.3d 834, 849 (6th Cir. 2016) ("Plaintiffs' allegations that Defendants made rude or critical comments, offered unhelpful suggestions, and acted disrespectfully do not undercut the reasonableness of Defendants' concrete actions taken in response to Plaintiffs' complaints."); *D.V. ex rel. B.V. v. Pennsauken Sch. Dist.*, 247 F.Supp.3d 464, 475 (D.N.J. 2017) (school psychiatrist's offensive comments did not constitute deliberate indifference where the District "reasonably addressed the one reported sexual orientation/bullying incident," where the psychiatrist played no part in the relevant investigation, and where there was no indication her attitude "pervaded the [school] District").

### c.    Plaintiff has not Adequately Alleged Deliberate Indifference

Although UCSF's alleged response was deficient in many respects, it was not "clearly unreasonable in light of the known circumstances," *Davis*, 526 U.S. at 648, such that it amounted to "an official decision . . . not to remedy" the sexual misconduct, *Gebser*, 524 U.S. at 290.

1    Consequently, to the extent Claim One alleges a post-harassment/assault Title IX claim, it must be

2    dismissed for failure to state a claim.

3        **ii.   Whether Plaintiff has Adequately Alleged that the UCSF's Alleged Deliberate**
         **Indifference Subjected Him to Further Sexual Harassment/Assault, Made Him**
4        **Vulnerable to Such, or Otherwise Subjected Him to Sex Discrimination**

5        In its prior order, the Court concluded that Plaintiff had failed to adequately allege the fifth

6    element because he had not alleged that UCSF's deliberate indifference "a) caused him to

7    experience any sexual harassment and assault, b) made him vulnerable to sexual harassment and

8    assault, or c) otherwise subjected him to sex discrimination in violation of Title IX."  Order at 19.

9    As noted above, the Regents seek dismissal of the Second Amended Complaint on the same

10   grounds.  *See* Regents Mot. at 2, 8–10; Regents Reply at 1–4.  Although Plaintiff has failed to

11   adequately allege the fourth element, the Court also considers whether his allegations are

12   sufficient to satisfy the fifth element.

13       Previously, the Court observed that several courts have concluded that "a plaintiff who has

14   withdrawn from an educational institution or opportunities offered by the institution due to a

15   reasonable concern of encountering his or her harasser or assaulter can adequately allege the fifth

16   element when the educational institution has failed to take adequate steps to protect the plaintiff."

17   Order at 18–19 n.20 (citations omitted).  There, the Court cited *Farmer v. Kansas State University*,

18   918 F.3d 1094, 1104–05 (10th Cir. 2019), where the plaintiffs withdrew from various education

19   opportunities after being raped by other students due to their concerns of encountering them;

20   *Williams*, 477 F.3d at 1295–97, where the plaintiff withdrew from the university after being raped

21   by other students due to her concern of encountering them; and *Takla*, No. 2:15-cv-04418 (CAS-

22   SHx), 2015 WL 6755190, at *4–5 (C.D. Cal. Nov. 2, 2015), where the plaintiff did not "set[] foot

23   on the [university's] campus" after being sexually harassed by a professor due to her concern of

24   encountering him.  *See id.*  In the First Amended Complaint, however, Plaintiff had not alleged

25   "that he was concerned that he would encounter Dr. Kapla or that UCSF failed to take adequate

26   steps to protect him from Dr. Kapla *after* UCSF had actual knowledge of Plaintiff's alleged

27   experience of sexual misconduct."  *Id.*

28

United States District Court
Northern District of California

1        In the Second Amended Complaint, Plaintiff does allege that he "avoid[ed] enrollment or

2  participation in . . . activities [for gay students] on campus for fear of seeing Dr. Kapla."  SAC

3  ¶ 43.  Above, the Court concluded that Plaintiff has not adequately alleged that UCSF acted with

4  deliberate indifference by failing to take adequate steps protect Plaintiff from Dr. Kapla after the

5  sexual misconduct was reported.  Even assuming that he had, however, Plaintiff has not included

6  sufficient allegations from which the Court may reasonably infer that there was any likelihood that

7  Plaintiff would encounter Dr. Kapla at UCSF-sponsored activities for gay students on campus and

8  that Plaintiff therefore was vulnerable to further sexual harassment or assault.  In addition to

9  *Farmer*, *Williams*, and *Takla* (the cases cited in the Court's previous order), Plaintiff relies on *Doe*

10  *v. University of Alabama in Huntsville*, 177 F.Supp.3d 1380, 1384–86 (N.D. Ala. 2016), where the

11  plaintiff, who had been raped by another student, saw her assailant on campus after—

12  unbeknownst to plaintiff—a university official had appealed the student conduct board's decision

13  to immediately expel her rapist.  Plaintiff also relies on *Spencer v. University of New Mexico*

14  *Board of Regents*, No. 15-CV-141 MCA/SCY, 2016 WL 10592223, at *6–7 (D.N.M. Jan. 11,

15  2016), where the plaintiff withdrew from the university after being raped by other students due to

16  her concern of encountering them.  As Plaintiff notes, these cases demonstrate that plaintiffs may

17  satisfy the fifth element when they are made vulnerable to further sexual harassment or assault,

18  even if they do not experience further sexual harassment or assault.  *See generally* Opp'n to

19  Regents Mot. at 1–7.  In particular, *Farmer*, *Williams*, *Takla*, and *Spencer* illustrate that plaintiffs

20  may satisfy the fifth element even when they remove themselves from environments where they

21  otherwise may have encountered their harassers or assailants.  In all of the discussed cases,

22  however, the harassers or assailants continued to go to the relevant campuses, so it was reasonable

23  to infer that there was some likelihood the plaintiffs would encounter them there.[13]  In the present

24

25  [13] *Fitzgerald*, 504 F.3d 165, one of the cases cited in the Court's prior order and relied on by
Plaintiff, is similar.  *See* Order at 18–19 n.20; Opp'n to Regents Mot. at 3–7.  In that case, an
26  elementary school student alleged that, after she had been sexually harassed by another student,
she had several "unsettling interactions" with her harasser at school.  *Fitzgerald*, 504 F.3d at 170.
27  The First Circuit suggested that a jury could reasonably find that the student was vulnerable to
further sexual harassment (the fifth element), but ultimately affirmed summary judgment in favor
28  of the school committee on the ground that a jury could not reasonably conclude that it had
responded with deliberate indifference (the fourth element).

United States District Court
Northern District of California

case, however, Plaintiff has not alleged that Dr. Kapla regularly went to UCSF's campus, that Plaintiff had ever encountered Dr. Kapla on UCSF's campus, or that he had ever encountered Dr. Kapla at UCSF-sponsored activities for gay students.[14]  Without more, the Court cannot conclude that UCSF's alleged failure to take additional steps to protect Plaintiff made him vulnerable to further sexual harassment or assault by Dr. Kapla.

Plaintiff also contends that Dr. Comelli's remarks themselves constitute further sexual harassment and therefore satisfy the fifth element.  *See* Opp'n to Regents Mot. at 2, 8.  At the hearing, the Regents argued that the alleged remarks do not constitute *sexual* harassment and, even assuming they do, there is no deliberately indifferent action by UCSF that made Plaintiff vulnerable to such harassment.  In response, Plaintiff contended that the remarks are attributable to UCSF because Dr. Comelli is an "agent" of the university.

Dr. Comelli's alleged remarks—blaming Plaintiff, who is gay, for "inviting" Dr. Kapla's alleged sexual harassment and assault—are *sexual* harassment.[15]  That said, the Court agrees with the Regents that Dr. Comelli's alleged remarks do not satisfy the fifth element of a post-

---

[14]  In his opposition to the Regents' motion, Plaintiff cites three more cases.  First, *Butters v. James Madison University*, 145 F.Supp.3d 610 (W.D. Va. Nov. 6, 2015) did not involve "similar" facts, as Plaintiff contends.  There, the plaintiff was sexually assaulted by three other students, and a video recording of the assault later "circulated 'throughout the [university] community.' "  *Id.* at 614.  Although the university was aware of video and its dissemination, it responded with deliberate indifference by failing to take any action to stop the video's spread and thereby subjected the plaintiff to further sexual harassment.  *Id.* at 619–21.  Second, *Doe v. University of Tennessee*, 186 F.Supp.3d 788 (M.D. Tenn. May 3, 2016) is inapposite because it involved pre-assault Title IX claims.  Third, *Tubbs v. Stony Brook University*, 15 Civ. 0517 (NSR), 2016 WL 8650463 (S.D.N.Y. Mar. 4, 2016) is inapposite because the court did not address the fifth element of a post-assault Title IX claim.

[15]  To satisfy the second element of a post-harassment Title IX claim, the plaintiff "must have suffered harassment 'that is so severe, pervasive, and objectively offensive that it can be said to deprive the [plaintiff] of access to the educational opportunities or benefits provided by the school.' "  *Karasek*, 956 F.3d at 1105 (quoting *Davis*, 526 U.S. at 650).  When a school's deliberate indifference subjects a plaintiff to further sexual harassment, it is not clear whether the further sexual harassment also must be "so severe, pervasive, and objectively offensive that it can be said to deprive the [plaintiff] of access to the educational opportunities or benefits provided by the school.' "  *Id.*  The parties have not raised the issue, and, to the Court's knowledge, the Ninth Circuit has not addressed it.  Even assuming that the further sexual harassment must rise to the same level as the original harassment, Plaintiff's theory is that Dr. Comelli's remarks effectively deprived him of educational opportunities and benefits (1) by causing him to withdraw from UCSF's free therapy and (2) by contributing to his psychological and emotional trauma which caused him to miss class, take a reduced course load, and withdraw from UCSF-sponsored activities.

United States District Court
Northern District of California

harassment/assault Title IX claim under the high court's guidance.  In particular, the Supreme Court has "rejected the use of agency principles to impute liability" to a school for the misconduct of its employees and "declined the invitation to impose liability under what amounted to a negligence standard"—holding the school liable for its failure to react to faculty-on-student harassment of which it knew or should have known.  *Davis*, 526 U.S. at 642 (citing *Gebser*, 524 U.S. 274).  Instead, the Supreme Court has explained that schools are only directly liable for their failure to reasonably respond to known acts of sexual discrimination that have occurred in a context subject to their control: "a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond."  *Gebser*, 524 U.S. at 290; *see Davis*, 526 U.S. at 643, 645–46.  In the typical, successful faculty-on-student sexual harassment case, a faculty member sexually harasses a student, the harassment is reported to an official who has the authority to direct the school's response, the school responds with deliberate indifference, and—as a result of the school's deliberate indifference—the student is further sexually harassed by the same faculty member or is vulnerable to such harassment.  Here, Plaintiff alleges that Dr. Kapla sexually harassed and assaulted him, that the harassment and assault were reported to an appropriate official, that UCSF responded with deliberate indifference, and that Plaintiff was subsequently sexually harassed by Dr. Comelli.  But Plaintiff does not allege that he was subjected to Dr. Comelli's remarks as a result of UCSF's deliberate indifference; to the contrary, there is no indication that it was clearly unreasonable for UCSF to continue to provide Plaintiff with free therapy with the same therapist who initially reported the sexual misconduct.  *See* SAC ¶¶ 21–24, 28.  Additionally, Plaintiff does not allege that Dr. Comelli himself had any control over UCSF's response to Plaintiff's Title IX complaint; rather, the allegation that Dr. Comelli originally reported Dr. Kapla's alleged sexual misconduct to Dean Jones and the Title IX office suggests that Dr. Comelli was not an official with the "authority to address the alleged discrimination [by Dr. Kapla] and to institute corrective measures on [UCSF's] behalf."  *Gebser*, 524 U.S. at 290; *see*

SAC ¶ 24.  Under these circumstances, to conclude that Dr. Comelli's remarks are attributable to UCSF would exceed the prescribed limits on Title IX damages liability.

### 3.  Whether Claim One Fails to State a Pre-Harassment/Assault Title IX Claim

In the First Amended Complaint, Plaintiff asserted multiple Title IX claims, but he did not distinguish between the pre- and post-harassment/assault theories of liability.  *See generally* First Am. Compl. ("FAC," dkt. 1-2) at 8, 11, 15.  Although most of Plaintiff's allegations concerned conduct that occurred after his alleged experience of sexual harassment and assault, Plaintiff also alleged that UCSF had failed to adequately train and supervise Dr. Kapla.  *See* Order at 4 & n.5 (citing FAC at 8).  Additionally, in his opposition to the Regents' motion to dismiss the First Amended Complaint, Plaintiff indicated that, if he were granted leave to amend, he would allege that the University of California had a "policy and practice of deceptively handling sexual misconduct cases."  *See id.* at 19 (citing FAC Opp'n (dkt. 20) at 6).  For support, Plaintiff cited the California State Auditor's report that details several deficiencies in the University of California's handling of sexual harassment cases between 2009 and 2013.  *See id.* (citing FAC Opp'n at 2–3, 5–6).

Because these allegations concerned conduct that occurred *prior to* Plaintiff's alleged experience of sexual harassment and assault, the Court considered whether Plaintiff had adequately alleged a *pre*-harassment/assault Title IX claim.  *See id.* at 19–20.  As previously stated, the elements are as follows:

> (1) a school maintained a policy of deliberate indifference to reports of sexual misconduct, (2) which created a heightened risk of sexual harassment that was known or obvious (3) in a context subject to the school's control, and (4) as a result, the plaintiff suffered harassment that was "so severe, pervasive, and objectively offensive that it can be said to [have] deprive[d] the [plaintiff] of access to the educational opportunities or benefits provided by the school."  *Davis*, 526 U.S. at 650.

*Karasek*, 956 F.3d at 1112.  In its prior order, the Court concluded that Plaintiff had failed to state such a claim because "Plaintiff ha[d] failed to adequately allege a 'causal link' between the University of California's university-wide 'policy and practice of deceptively handling sexual misconduct cases' and the alleged sexual harassment and assault by Dr. Kapla . . . ."  Order at 20.

United States District Court
Northern District of California

In addition, the Court concluded that any pre-harassment/assault claim was barred by the applicable two-year statute of limitations. *Id.* The Court did not address equitable estoppel and/or equitable tolling because those issues were not adequately briefed, but it did instruct Plaintiff to include in his Second Amended Complaint allegations "to support equitable estoppel and/or equitable tolling, if applicable." *Id.* at 20; *see id.* at 21 n.23. Accordingly, to the extent Plaintiff attempted to allege a pre-harassment/assault Title IX claim in the First Amended Complaint, the Court dismissed the claim with leave to amend. *Id.* at 20.

Like his First Amended Complaint, Plaintiff's Second Amended Complaint does not distinguish between the pre- and post-harassment/assault theories of Title IX liability, and it includes some allegations of UCSF's conduct prior to Plaintiff's alleged experience of sexual harassment and assault. Although Plaintiff does not allege that UCSF failed to adequately train and supervise Dr. Kapla or that the University of California had a "policy and practice of deceptively handling sexual misconduct cases, he does reference the California State Auditor's report. SAC ¶¶ 44–45. According to the operative complaint, this report concluded that University of California schools had not ensured that their faculty and staff were sufficiently trained on responding to and reporting incidents of sexual harassment and sexual violence; had not "always" complied with requirements for "distribution of relevant policies"; needed to do more to properly educate students on sexual harassment and sexual violence; and needed to better inform student complainants about the statuses and outcomes of their investigations. *Id.* ¶ 45. Plaintiff also alleges that on March 2, 2017—prior to Plaintiff's experience of sexual misconduct—Sam Hawgood, the Chancellor of UCSF, sent a letter to the members of the UCSF community addressing sexual misconduct. *Id.* ¶ 2. In that letter, Chancellor Hawgood recognized that "between January 1, 2013 and April 6, 2016, at the ten campuses of the University of California," there were 113 reported violations of the Title IX Sexual Violence and Sexual Harassment Policy, including 26 cases at UCSF. *Id.* Chancellor Hawgood also assured students that UCSF "ha[d] taken actions to both raise awareness of sexual violence and sexual harassment as well as to protect and support every member of the UCSF community" and that UCSF was committed to "clarity, fairness and timeliness" in its investigations and appropriate "remedies or disciplinary

30

actions" for every report of sexual misconduct. *Id.* According to Plaintiff, "[t]his is a case of Defendants' failures of these representations." *Id.* ¶ 3.

In their present motion to dismiss, the Regents argue that, to the extent Plaintiff seeks to bring a pre-harassment/assault Title IX claim, he has not cured the defects identified by the Court in its prior order. *See* Regents Mot. at 2, 10–13.

### a.  Whether Any Pre-Harassment/Assault Claim Fails to Adequately Allege Causation

First, the Regents contend that Plaintiff has failed to allege that any action or inaction by the University of California or UCSF was causally linked to his experience of sexual misconduct. Regents Mot. at 2, 5, 10–12.  Plaintiff does not respond to this argument in his opposition. *See generally* Opp'n to Regents Mot.

The Court agrees with the Regents.  First, the Ninth Circuit has explained that "[t]he element of causation ensures that Title IX liability remains within proper bounds.  To that end, adequately alleging a causal link between a plaintiff's harassment and a school's deliberate indifference to sexual misconduct *across campus* is difficult." *Karasek*, 956 F.3d at 1114 (italics added).  Although the California State Auditor's report details several deficiencies in the University of California's handling of sexual harassment cases between 2009 and 2013, and although Dean Chancellor's letter indicates that there were 26 reports of sexual misconduct at UCSF between January 1, 2013 and April 6, 2016, Plaintiff has not alleged that the University of California or UCSF maintained a policy of deliberate indifference to sexual misconduct across campus that created a heightened risk of sexual misconduct—let alone that Plaintiff was sexually harassed and assaulted as a result.  Second, although the Ninth Circuit has recognized that "it may be easier to establish a causal link between a school's policy of deliberate indifference and the plaintiff's harassment when the heightened risk of harassment exists in a *specific program*," *id.* at 1113 (italics added), Plaintiff has failed to make the same allegations with respect to UCSF's clerkships programs. *C.f. Karasek v. Regents of Univ. of Cal.*, No. 3:15-cv-03717-WHO, 2020 WL 6684869, at *18 (N.D. Cal. Nov. 12, 2020) (denying motion to dismiss where plaintiff had alleged an "unusually strong" causal link: "the same person who assaulted her had previously

1   assaulted another female student on a similar Club trip and the University did nothing to remedy it

2   and two other similar assaults happened in highly related contexts").  In brief, Plaintiff has failed

3   to allege or argue that his experience of sexual misconduct was causally linked to any prior action

4   or inaction by UCSF or the University of California.[16]  So, to the extent the Second Amended

5   Complaint attempts to allege a pre-harassment/assault Title IX claim, the claim must be dismissed.

### b.  Whether Any Pre-Harassment/Assault Claim is Time-Barred

7        Second, the Regents argue that Plaintiff's report of sexual misconduct did not equitably

8   toll the statute of limitations for any pre-harassment/assault Title IX claim because that report

9   involved a different set of facts: "the Title IX administrative proceedings centered" on the alleged

10  sexual harassment and assault, whereas any pre-harassment/assault Title IX claim "necessarily

11  centers on 'events that occurred before' " the alleged sexual harassment and assault.  Regents Mot.

12  at 13 (quoting *Karasek*, 956 F.3d at 1099).  Meanwhile, Plaintiff stresses that he sought to resolve

13  "all issues" through UCSF's Title IX office and, after the office advised him on October 16, 2018

14  that it had closed his case, he filed the present action "within the statutory time."[17]  Opp'n to

15  Regents Mot. at 9.

16       "In the absence of a federal statute of limitations, federal courts borrow not only the

17  applicable state statute, but also the rules for its tolling, unless to do so would be ' "inconsistent

18  with the federal policy underlying the cause of action under consideration." ' "  *Alexopulos ex rel.*

19  *Alexopulos v. S. F. Unified Sch. Dist.*, 817 F.2d 551, 555 (9th Cir. 1987) (quoting *Bd. of Regents v.*

20  *Tomanio*, 446 U.S. 478, 485 (1980) (citation omitted).  Because "Title IX does not expressly

21  provide any statute of limitations," courts "borrow" the "applicable state statute of limitations for

22  personal injury actions."  *Stanley v. Trs. of Cal. State Univ.*, 433 F.3d 1129, 1136 (9th Cir. 2006).

23  Thus, the Court borrows California Code of Civil Procedure section 335.1, which establishes a

24

25  [16]  Consequently, the Court need not decide the level of causation that is required to state a pre-
26  harassment/assault Title IX claim.  *See Karasek v. Regents of Univ. of Cal.*, 2020 WL 6684869, at
    *18 (declining to decide whether a pre-harassment/assault Title IX claim requires but-for and
27  proximate causation or substantial factor causation where one plaintiff's allegations satisfied both
    standards and another plaintiff's allegations satisfied neither).
28  [17]  Plaintiff has not argued that the Regents should be equitably estopped from raising their statute
    of limitations defense.  *See generally* Opp'n to Regents Mot.

two-year limitations period for personal injury actions, and California's equitable tolling doctrine, "unless to do so would be ' "inconsistent with the federal policy underlying" ' " Title IX. *Alexopulos*, 817 F.2d at 555 (citations omitted); *see Stanley*, 433 F.3d at 1136 (stating that California Code of Civil Procedure section 335.1 applies to Title IX claims filed after January 1, 2003, when the section took effect).

The California Supreme Court recently reviewed the state's equitable tolling doctrine in *Saint Francis Memorial Hospital v. State Department of Public Health*, 9 Cal.5th 710 (2020). It explained:

> Equitable tolling is a "judicially created, nonstatutory doctrine" that " 'suspend[s] or extend[s] a statute of limitations as necessary to ensure fundamental practicality and fairness.' " *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 45 Cal.4th 88, 99 (2008) (citations omitted). the doctrine applies "occasionally and in special situations" to "soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having a day in court." *Addison v. State*, 21 Cal.3d 313, 316 (1978). Courts draw authority to toll a filing deadline from their inherent equitable powers—not from what the Legislature has declared in any particular statute. *See Elkins v. Derby*, 12 Cal.3d 410, 420 n.9 (1974). For that reason, [courts] presume that statutory deadlines are subject to equitable tolling. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95–96 (1990).

*Id.* at 719–20. As the court explained, however, this "presumption can be overcome" where there is "explicit statutory language or a manifest policy underlying a statute [that] simply cannot be reconciled with permitting equitable tolling." *Id.* at 720. If the presumption is not overcome, equitable tolling applies "when three 'elements' are present: '[ (1) ] timely notice, and [ (2) ] lack of prejudice, to the defendant, and [ (3) ] reasonable and good faith conduct on the part of the plaintiff.' " *Id.* at 724 (quoting *Addison*, 21 Cal.3d at 319). As is relevant here, equitable tolling may apply " '[w]hen an injured person has several legal remedies and, reasonably and in good faith, pursues one.' " *McDonald*, 45 Cal.4th at 100 (citations omitted). In these circumstances, the doctrine may "afford[] grievants the opportunity to pursue informal remedies," without "compromising defendants' significant 'interest in being promptly apprised of claims against them in order that they may gather and preserve evidence' because that notice interest is satisfied by the filing of the first proceeding that gives rise to tolling." *Id.* (quoting *Elkins*, 12 Cal.3d at 417–18 (citations omitted)).

Plaintiff's pre-harassment/assault allegations are scarce, and the parties have not squarely addressed whether Plaintiff has adequately alleged the elements necessary for the application of equitable tolling under California law: (1) that the Regents had timely notice of Plaintiff's claim and his intent to litigate, (2) that the Regents would not be prejudiced by the application of equitable tolling, and (3) that Plaintiff acted reasonably and in good faith.[18]  *Saint Francis Mem'l*, 9 Cal.5th at 724–30.  For these reasons and because the Court has already concluded that Plaintiff has failed to adequately allege causation in support of any pre-harassment/assault Title IX claim, the Court does not address whether any such claim is also time-barred.

### c.   Claim One is Dismissed With Leave to Amend

Above, the Court has identified defects with Plaintiff's Title IX claim under both the pre- and post-harassment/assault theories of liability.  At the hearing, Plaintiff's counsel made a number of representations which suggest that Plaintiff may be able to cure these defects.  Consequently, the Court grants Plaintiff leave to amend his complaint to allege a Title IX claim against the Regents under either or both theories of liability.

### C.   Whether Plaintiff's State Claims (Claims Two Through Seven) Fail to State a Claim

#### 1.   Applicable Statutes of Limitations and Tolling Doctrine

Plaintiff's state claims are governed by California's statutes of limitations and equitable tolling doctrine.  *Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Financial Corp.*, 878 F.Supp.2d 1009, 1015 (9th Cir. 2011).  With the exception of his sexual harassment

---

[18]  In their papers, the Regents, quoting *FEC v. Williams*, 104 F.3d 237, 240–41 (9th Cir. 1996), argue that equitable tolling applies only if Plaintiff proves "the following elements: fraudulent conduct by the defendant resulting in concealment of the operative facts, failure of the plaintiff to discover the operative facts that are the basis of its cause of action within the limitations period, and due diligence by the plaintiff until discovery of those facts."  Regents Mot. at 12; *see* Regents Reply at 5–6.  Their reliance on *FEC v. Williams* is misplaced because that case involved 28 U.S.C. § 2462, the federal statute of limitations that "applies to FEC actions for the assessment or imposition of civil penalties under [the Federal Election Campaign Act]."  *FEC v. Williams*, 104 F.3d at 240.  Accordingly, the Ninth Circuit in *FEC v. Williams* had no occasion to apply California's equitable tolling doctrine.  *C.f. Alexopulos*, 817 F.2d at 555.

Meanwhile, Plaintiff relies on *McDonald*, 45 Cal.4th 88, and *Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131 (9th Cir. 2001).  While these cases are apt and Plaintiff analogizes his case in general terms, he never specifically argues that he has adequately alleged the three elements necessary for the application of equitable tolling.  *See* Opp'n to Regents Mot. at 8–10.

1 claim, each of Plaintiff's state claims is subject to a two-year statute of limitations.  *See* Cal. Code

2 Civ. Proc. § 335.1 (two-year statute of limitations for "an action for assault, battery, or injury

3 to . . . an individual caused by the wrongful act or neglect of another"); *see also Flores v.*

4 *Presbyterian Intercommunity Hosp.*, 63 Cal.4th 75, 79 (2016) (section 335.1 applies to ordinary

5 negligence); *Pugliese v. Super. Ct.*, 146 Cal.App.4th 1444, 1450 (2007) (applying section 335.1 to

6 intentional infliction of emotional distress); *Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1008

7 (9th Cir. 2011) (same); *see also* Cal. Code Civ. Proc. § 339(1) (two-year statute of limitations for,

8 among other things, an "action upon a contract, obligation or liability not founded upon an

9 instrument of writing").[19]  Plaintiff's sexual harassment claim is subject to the California Fair

10 Employment and Housing Act's former one-year limitations period that was in effect until

11 December 31, 2019.[20]  *See* Cal. Gov. Code § 12960(d) (2019).

12           Under California law, the general rule is the " 'last element' accrual rule": a statute of

13 limitations ordinarily runs "from 'the occurrence of the last element essential to the cause of

14 action.' "  *Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal.4th 1185, 1191 (2013) (citations omitted).

15 Plaintiff does not dispute that each of his state claims against Dr. Kapla accrued on or before

16 August 20, 2017, when his clerkship with Dr. Kapla ended, and more than two years before the

17 present action was filed in state court on January 24, 2020.  Thus, the only issue is whether the

18 doctrine of equitable tolling saves Plaintiffs' otherwise-time-barred claims.  If Plaintiff's report of

19 sexual misconduct to UCSF equitably tolled the statutes of limitations for Plaintiff's negligence,

20 intentional infliction of emotional distress, assault, battery, and breach of the covenant of good

21

22 [19]  The Court need not decide whether section 335.1 or section 339(1) of the California Code of
   Civil Procedure governs Plaintiff's claim for breach of the covenant of good faith and fair dealing

23 because both sections establish two-year limitations periods.  *See Richardson v. Allstate Ins. Co.*,
   117 Cal.App.3d 8,13 (1982) (applying section 339(1)); *compare Rattagan v. Uber Techs., Inc.*,

24 No. 19-cv-01988-EMC, 2020 WL 4818612, at *3 (N.D. Cal. Aug. 19, 2020) (applying section
   335.1) *with Leon v. Wells Fargo Bank*, No. 17-cv-03371-BLF, 2018 WL 3474182, at *3 (N.D.

25 Cal. July 19, 2018) (applying section 339(1)).
   [20]  Although the Second Amended Complaint does not expressly state that Plaintiff's sexual

26 harassment claim arises under the California Fair Employment and Housing Act (FEHA), Dr.
   Kapla construes it as doing so, and Plaintiff has not indicated otherwise.  *See* Kapla Mot. at 4; *see*

27 *also Medix Ambulance Service, Inc. v. Super. Ct.*, 97 Cal.App.4th 109, 118–19 (2002) ("[T]he
   cause of action for sexual harassment is a creature of statute."); *Myers v. Trendwest Resorts, Inc.*,

28 148 Cal.App.4th 1403, 1426 (2007) ("There is no common law cause of action for sexual
   harassment.").

United States District Court
Northern District of California

35

faith and fair dealing claims from August 2017—when Plaintiff reported the sexual misconduct to UCSF and was removed from his clerkship with Dr. Kapla—to October 2018—when UCSF informed Plaintiff that it had closed his case, then these claims would have been timely filed. Even assuming that equitable tolling applies to Plaintiff's sexual harassment claim, however, that claim would have been filed after the one-year limitations period would have expired in October 2019.[21] *See* Cal. Gov. Code § 12960(d) (2019).  Because this defect is apparent from the face of the Second Amended Complaint, it must be dismissed.  *Jablon*, 614 F.2d at 682.

As explained above, California law presumes that statutes are subject to equitable tolling, *see Saint Francis Mem'l*, 9 Cal.5th at 720, and there is no indication that equitable tolling is incompatible with the applicable statutes of limitations for Plaintiff's remaining common law claims.  *C.f. Lantzy v. Centex Homes*, 31 Cal.4th 363, 371 (2003) (observing that the presumption had been overcome in cases where the California Legislature had expressly precluded or limited equitable tolling and where equitable tolling was inconsistent with the statutory text or legislative policy); *id.* at 373 (suggesting that equitable tolling is not inconsistent with the text of California's "garden-variety" limitations statutes," including sections 335 and 339 of the California Code of Civil Procedure).  Accordingly, the Court considers whether Plaintiff has adequately alleged the three elements necessary for the application of equitable tolling: (1) that Dr. Kapla had timely notice of Plaintiff's claims and his intent to litigate, (2) that Dr. Kapla would not be prejudiced by the application of equitable tolling, and (3) that Plaintiff acted reasonably and in good faith.  *Saint Francis Mem'l*, 9 Cal.5th at 724.

---

[21]  Effective January 1, 2020, California Assembly Bill 9 of the 2019–20 legislative session extended the limitations period for sexual harassment claims to three years.  *See* Cal. Gov. Code § 12960(e) (as amended by A.B. No. 9 § 1, 2019–20 Sess. (Cal. 2019)).  As the California Supreme Court has explained, however, "Once a claim has lapsed (under the formerly applicable statute of limitations), revival of the claim is seen as a retroactive application of the law under an enlarged statute of limitations.  Lapsed claims will not be considered revived without express language of revival."  *See Quarry v. Doe I*, 53 Cal.4th 945, 957 (2012).  Meanwhile, Assembly Bill 9 expressly provides, "This act shall not be interpreted to revive lapsed claims."  A.B. No. 9 § 3, 2019–20 Sess. (Cal. 2019).

United States District Court
Northern District of California

1
2

### 2.   Whether Claims Two Through Five and Claim Seven Are Time-Barred

####    a.   Whether Dr. Kapla had Timely Notice

The first element of equitable tolling "ought to be interpreted literally: When confronted with equitable tolling claims, courts must examine each case on its facts to determine whether the defendant received timely notice of the plaintiff's intent to file suit." *Saint Francis Mem'l*, 9 Cal.5th at 727.  In the Second Amended Complaint, Plaintiff alleges that, pursuant the U.S. Department of Education's Questions and Answers on Campus Sexual Misconduct, a school "should provide written notice to the responding party of the allegations constituting a potential violation of the school's misconduct policy" once the school "decides to open an investigation that may lead to disciplinary action against the responding party." SAC ¶ 15.  This guidance allegedly provides that the notice should include "sufficient details . . . to prepare a response before any initial interview" including "the identities of the parties involved, the specific section of the code of conduct allegedly violated, the precise conduct allegedly constituting the potential violation, and the date and location of the alleged incident." *Id.*  Additionally, Plaintiff alleges that according to UCSF's "Medical Student Education Policy for Volunteer Clinical Professor Roles and Responsibilities," a Volunteer Clinical Professor's appointment may be terminated "for cause, such as . . . when, in the opinion of the Dean or designee, . . . the conduct or performance of the appointee does not warrant continued appointment," provided that the Dean or designee gives the professor "30 (thirty) consecutive days prior written notice with a statement of the reason for the termination." *Id.* ¶ 19.  Referring to these policies and UCSF's potential need to "indemnify" Dr. Kapla, Plaintiff alleges that UCSF "had an obligation to, and did in fact advise Dr. Kapla of the charges against him by Plaintiff." *Id.* ¶ 20.  Further, Plaintiff alleges that, according to "[r]ecords obtained from UCSF," UCSF would notify Dr. Kapla that he was "no longer a volunteer due to a 'severe' complaint of sexual harassment against him." *Id.*  Consequently, Plaintiff alleges, Dr. Kapla "had ample opportunity to gather evidence and to avoid prejudice in the event of litigation." *Id.*

Dr. Kapla contends these allegations are insufficient to demonstrate that he was alerted to the need to begin investigating the facts that would form the basis of the present claims.  *See*

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Kapla Mot. at 6–7.  Dr. Kapla also attempts to distinguish prior cases where plaintiffs' pursuits of

2  alternate remedies have equitably tolled statutes of limitations on the ground that he was not

3  provided with a "formal complaint." *Id.* at 6 (citing *Elkins*, 12 Cal.3d 410, and *Addison*, 21 Cal.3d

4  313).  Finally, Dr. Kapla relies on *Salazar v. Regents of University of California*, No. 16-cv-

5  05235-EDL, 2017 WL 4586831 (N.D. Cal. Apr. 27, 2017), *aff'd*, 812 Fed.Appx. 410 (9th Cir.

6  2020), where "a medical student also filed a complaint about alleged misconduct at UCSF,

7  triggering an . . . investigation" by the U.S. Department of Education's Office of Civil Rights

8  (OCR), and where the court "concluded that "the earlier administrative complaint[s] did not

9  provide adequate notice to the Regents or the individually named defendants, even when the

10  individual defendants allegedly received copies of the complaints and/or were to be told about the

11  complaint[s]." *Id.* at 7.

12       "When considering whether a plaintiff provided timely notice, courts focus on whether the

13  party's actions caused the defendant to be 'fully notified within the [statute of limitations] of

14  plaintiffs' claims and their intent to litigate.' " *Saint Francis Mem'l*, 9 Cal.5th at 726 (quoting

15  *Addison*, 21 Cal.3d at 321).  Contrary to Dr. Kapla's suggestion, the caselaw contains no

16  requirement that a defendant must be provided with a "formal complaint" in order for the

17  plaintiff's pursuit of an alternate remedy to equitably toll the statute of limitations for a claim later

18  filed in court.  *See generally Elkins*, 12 Cal.3d 410 (statute of limitations equitably tolled while

19  plaintiff pursued a worker's compensation claim against defendant based on the same set of facts,

20  even though there was no exhaustion requirement that plaintiff pursue worker's compensation

21  claim prior to filing a civil action); *Addison*, 21 Cal.3d 313 (statute of limitations equitably tolled

22  while plaintiff pursued an action in federal court based upon the same set of facts).  Additionally,

23  in *Salazar*, the court held that the plaintiff's internal UCSF complaint and external OCR

24  complaints did not provide timely notice to "the broad set of institutional and individual

25  defendants" because the plaintiff did not allege that the complaints covered "identical or similar

26  claims" to the civil action or that the defendants were notified of the fourth OCR complaint, which

27  was the only one that came "after major developments in his case."  2017 WL 4586831, at *8–9.

28  Meanwhile, in the present case, Dr. Kapla—the sole defendant—was allegedly notified of

United States District Court
Northern District of California

Plaintiff's allegations of his misconduct—which form the basis of Plaintiff's present claims—after the conclusion of Plaintiff's clerkship with Dr. Kapla.

Tellingly, Dr. Kapla argues that "[t]here is no *factual* basis to conclude that Dr. Kapla was advised" of Plaintiff's allegations of his misconduct and that Plaintiff has failed to meet the "evidentiary test." Kapla Mot at 6 (italics added). But at this stage, Plaintiff's well-pleaded allegations are presumed to be true and construed in the most favorable light. Assuming that UCSF did in fact notify Dr. Kapla that he had been removed as a member of UCSF's Volunteer Clinical Faculty "due to a 'severe' complaint of sexual harassment against him," SAC ¶ 20, it is reasonable to infer that Dr. Kapla was sufficiently apprised of Plaintiff's allegations against him and the need to defend himself, due to the ongoing Title IX investigation process and the likelihood of subsequent litigation. Although there may be factual disputes over when Dr. Kapla was notified and the extent to which he was informed of the specific allegations against him, those disputes cannot be resolved at this stage.

### b. Whether Dr. Kapla Would be Prejudiced by the Application of Equitable Tolling

The "core focus" of the second element, lack of prejudice to the defendant, is "whether application of equitable tolling would prevent the defendant from defending a claim on the merits." *Saint Francis Mem'l*, 9 Cal.5th at 728 (citing *Addison*, *supra*, 21 Cal.3d at 318). As previously noted, Plaintiff has alleged that because UCSF notified Dr. Kapla that he was "no longer a volunteer due to a 'severe' complaint of sexual harassment against him," Dr. Kapla "had ample opportunity to gather evidence and to avoid prejudice in the event of litigation." SAC ¶ 20.

In his motion, Dr. Kapla again relies on *Salazar*, where the court stated, "Although the two sets of claims need not be identical, the facts must be sufficiently similar that the defendant's investigation of the first claim will enable a fair defense of the second." Kapla Mot. at 7 (quoting *Salazar*, 2017 WL 4586831, at *9 (citation omitted)). Dr. Kapla also argues that because he "left [UCSF] before the suit was filed," he "had/has no ability to go back in time and recreate lost documents, emails, information, or other 'evidence' that would be used to respond to Plaintiff's belated claim." *Id.* Plaintiff responds that, "[u]pon learning that he was removed from the UCSF

program for 'severe' allegations against him in [Plaintiff's] matter, Dr. Kapla had an opportunity to preserve evidence, or do anything to protect his rights."  Opp'n to Kapla Mot. at 4.  Plaintiff also contends that "it is unlikely that there will be physical evidence in this case which needed to be preserved."  *Id.*

Salazar is again inapposite because the facts that formed the basis of the plaintiff's internal UCSF and external OCR complaints were not "sufficiently similar" to those that formed the basis of his subsequent civil action.  2017 WL 4586831, at *9.  Here, Plaintiff's report of sexual misconduct was based on the same set of allegations as the present claims against Dr. Kapla.

Again, on a motion to dismiss, Plaintiff's allegations are presumed true and construed in the most favorable light.  Upon learning that he had been removed from his role as a Volunteer Clinical Faculty member "due to a 'severe' complaint of sexual harassment against him," SAC ¶ 20, Dr. Kapla should have begun gathering evidence and preparing his defense against such allegations—the same allegations that form the basis of Plaintiff's present claims against Dr. Kapla.  While there may be factual disputes concerning Dr. Kapla's ability do so, they cannot be resolved on a motion to dismiss.

### c.   Whether Plaintiff Acted Reasonably and in Good Faith

The third element of equitable tolling requires reasonable and good faith conduct by the plaintiff.  The reasonableness prong requires the plaintiff to demonstrate that the late filing was "*objectively* reasonable under the circumstances."  *Saint Francis Mem'l*, 9 Cal.5th at 729 (italics added).  Meanwhile, the good faith prong requires the court to determine whether the late filing was "*subjectively* in good faith—whether it was the result of an honest mistake or was instead motivated by a dishonest purpose."  *Id.* (italics added).

Dr. Kapla contends that it was not objectively reasonable for Plaintiff to have taken "absolutely no action to prosecute his claims for another 14 months" after he "learned of the closed investigation on October 16, 2018."  Kapla Mot. at 8.  For support, Dr. Kapla cites *Salazar*, where the court concluded that it was not objectively reasonable for the plaintiff to have "waited almost four years after his dismissal from UCSF to file [the] action, and more than four years after many of his alleged discriminatory comments and actions."  *Id.* (quoting *Salazar*, 2017 WL

4586831, at *9).  *Salazar* observed that even if equitable tolling applied "very expansively," the relevant statutes of limitations "would have nearly run."  *Id.* (quoting *Salazar*, 2017 WL 4586831, at *9).  Further, Dr. Kapla asserts that Plaintiff "failed to diligently follow-up on the investigation while it might have been pending."  *Id.*  In response, Plaintiff contends that he "fully cooperated with the UCSF Title IX officer and their investigation" and "put his trust in UCSF" to "assist him in getting the help he needed following Dr. Kapla's harassment."  Opp'n to Kapla Mot. at 4.

The objective reasonableness prong "focuses not on a party's intentions or the motives behind a party's actions, but instead on whether that party's actions were fair, proper, and sensible in light of the circumstances."  *Saint Francis Mem'l*, 9 Cal.5th at 729.  The California Supreme Court has explained that this analysis is akin to the one used to assess deficient performance for ineffective assistance of counsel claims.  *Id.*  Assuming that the statutes of limitations were equitably tolled from August 2017 to October 2018, Plaintiff's remaining state claims, filed on January 24, 2020, would have been filed well within the applicable two-year limitations periods. Also, Plaintiff has alleged that while UCSF investigated his report of sexual harassment and assault, he relied on UCSF officials' statements that he need not hire a lawyer.  SAC ¶¶ 34–39, 46–47, 49.  In light of these circumstances, it was not objectively unreasonable for Plaintiff to have filed the present action 14 months after UCSF informed him that it had closed his case. Finally, there is no indication that Plaintiff's late filing of these claims was due to anything other than an honest mistake.  Therefore, Plaintiff has adequately pleaded the third element of equitable tolling.

### d.  At This Stage, Claim Six is Time-Barred, but Claims Two Through Five and Claim Seven Are Not

Because the allegations of the Second Amended Complaint permit Plaintiff to prove that the applicable statutes of limitations were equitable tolled while UCSF was investigating his report of sexual misconduct, the Court declines to dismiss Plaintiff's negligence, intentional infliction of emotional distress, assault, battery, and breach of the covenant of good faith and fair dealing claims on timeliness grounds.  *See Jablon*, 614 F.2d at 682.  Additionally, because Plaintiff may be able to cure the defects of his federal claim, the Court continues to exercise supplemental

United States District Court
Northern District of California

1    jurisdiction over these state claims in the interest of judicial economy.  *See* 28 U.S.C.

2    § 1367(c)(3).

3        As explained above, however, even assuming that equitable tolling applies to Plaintiff's

4    sexual harassment claim, it was not filed within the applicable one-year limitations period.

5    Because it is clear that Plaintiff cannot cure this defect, the Court dismisses that claim with

6    prejudice.[22]

7    **IV.    CONCLUSION**

8        For the reasons stated above, the motions to dismiss are GRANTED in part and DENIED

9    in part.  Claims One through Five and Claim Seven are dismissed with leave to amend, and Claim

10   Six is dismissed with prejudice.

11       Plaintiff may file a third amended complaint no later than January 18, 2021 to allege

12   additional specific facts in support of his claims, consistent with the discussion above.  He may

13   not add any new claims, or new parties, without leave of the Court.

15       **IT IS SO ORDERED.**

16   Dated: December 18, 2020

17   _____

18   JOSEPH C. SPERO
     Chief Magistrate Judge

United States District Court
Northern District of California

---

[22]  Plaintiff's First Amended Complaint did not include a sexual harassment claim, and the Court's order dismissing the First Amended Complaint clearly stated that Plaintiff could not add any new claims without leave of the Court.  *See* Order at 21.  Plaintiff therefore added the sexual harassment claim in violation of the Court's prior order, which itself is a separate and sufficient reason to strike the claim.